Good morning, and may it please the Court, my name is Jason Kim, and I'm here this morning representing the Hawaii Disability Rights Center, which is the protection and advocacy organization for Hawaii under federal law. A young man that's referred to as R.T.D. and his parents, and that's in the second case, which is the administrative case. And finally, this class that was certified in this matter pursuant to Rule 23b-2. Now, the class in this case consists of hundreds of Hawaii young adults between the ages essentially of 20 and 22, who have in the past received special education from the Department of Education, and now through this lawsuit they're seeking the same opportunity to continue that special education as young adults in that same age range in Hawaii have who don't need special education. And although this appeal comes after a one-day bench trial, in our view this case turns on a fairly straightforward issue of statutory interpretation that I'll walk through in a minute, as well as a handful, maybe four, of key undisputed facts. So unless there are any questions at this point, I wanted to walk through our view of the statutory interpretation issue. Please. Thank you. So the key provision of the IDEA that we're concerned with here is 20 U.S.C. 1412. It's referred to in the briefs and in the orders as the IDEA's age mandate. And that part of the IDEA requires a state to provide appropriate public education through the age of 21, that is the last day that the student is 21, unless to do so, and I quote, would be inconsistent with state law or practice or the order of any court respecting the provision of public education to children in those age ranges. So the issue really in dispute in this case is what does public education in that phrase that I just read mean in this context? But taking a step back, obviously the point of that provision that I just read is an equality mandate. That is, if the state provides educational opportunities to non-disabled students, then they have to provide similar, as best as they can, opportunities to disabled students. The other key to that provision is that it refers to state law or practice. And we'll see that that's a recurring theme through the statutory analysis, that the IDEA is always turning back to state law and state standards. In its ruling, the district court found that only conventional high schools constitutes public education for this purpose. What is wrong with that analysis? Where's the error there? Sure, and there are a few things wrong with that analysis. One, it's incorporating this concept of a conventional academic education, and there's no real basis for that anywhere in the IDEA. As the Supreme Court noted in the Rowley case, which was the first case that they took up involving the IDEA's predecessor, the IDEA is primarily procedural in nature. It doesn't govern the substantive standard of the education that a state can provide. So that's one issue that we have with the judge's analysis. The second issue is, you know, I think the judge looked at this solely through the prism of secondary education and conventional secondary education, whereas we point out in the briefing, Hawaii state law also provides for providing remedial and elementary education to adults, that is, individuals in the 20 to 22 age range. The third problem with the court's analysis is it completely ignores the governing state law. The state itself defines what secondary education is, and this might sound circular, but this is, you know, what it is, is the Department of Education provides the GED and the competency-based program, and it does it under its mandate to provide secondary education to adults. The competency-based degree program is more of a life skills program, is it not? Yes, yes, Your Honor. But it still is encompassed as part of the education? Yes, Your Honor, and it absolutely has to be, or otherwise the Department of Education is not fulfilling its statutory mandate. And the key law to look at here is Hawaii revised statute 302A433, and that statute tells the Department of Education what programs it's required to offer. And one of the programs it's required to offer is secondary education. That's the exact term used in the statute. If you ask the DOE, as we did in deposition at trial, what specific programs do you offer to comply with this part of your mandate to offer secondary education, the DOE's answer has always been, well, it's the GED and the CB programs. So if the statute is telling them that they're required to provide secondary education to adults, and the DOE is telling us that the way they do that is through the GED and the CB programs, how does the Department of Education then turn around and say, well, those aren't really secondary education at all, it's some, you know, vague sort of life skill, they'll teach you how to balance your checkbook and how to make a phone call, and that has no connection to anything academic. I mean, that's fine. It's unfortunate that that's the nature of the program, but it doesn't make any difference to our claim in our view because the IDEA always turns us and the court back to state law and state standards, and it could not be clearer that under statewide law, secondary education is what the DOE is providing in these GED and CB programs. And the other thing I didn't want to lose sight of in looking at the DOE's statutory mandate with respect to adult education is that they're not only required to provide secondary education, as I mentioned before, they're also required to provide a program of elementary education and remedial education to adults. So, you know, it seems, it would seem an unusual and unfortunate result if the DOE could curtail its obligations under the IDEA because of the sort of relatively poor nature of its adult education programs. It would be clear that if the DOE were providing typical academic classes in the community schools for adults that are similar to the ones provided in the high schools, that I think it would have been even more clear that we were entitled to win this case. But the fact that they have chosen to offer secondary education through something that's sort of innovative and different shouldn't affect their obligations under the IDEA because state law requires them to provide secondary education and elementary education to adults. So that has to be public education. Let me ask you about the opinion letter dated May 11th from the Federal Department of Education. And it seems to show that adult education is separate from public secondary education. Isn't that right? You know, I think in the context of the issue they were addressing, that's a perfectly reasonable interpretation of it. But obviously they were not addressing this specific issue framed in the way that the issue is framed here. And the basic outcome of that letter is saying, you know,  and the student voluntarily chooses a different kind of education, then they can't take their IEP with them to that new setting. And in that specific context, that appears to be a very reasonable rule. I don't think it would be fair, though, to read that broadly as saying for all purposes that the Department of Education would consider adult education as something completely discreet from elementary and secondary education. It's clear, again, going back to Hawaii law, that under Hawaii law, there's not a distinction between secondary education and adult education. In fact, it's the opposite because the relevant law says that the adult education program is required to provide secondary education. So that's our analysis of state law. And, you know, another point I wanted to add about state law is the reason we're here is because of this Act 163 in 2010. And the relevant provision there states that no person who is 20 years of age or over on the first instructional day of the school year shall be eligible to attend a public school. So the term that they're using in the law is not public education, which is the term we're concerned with in the IDEA. It's the term public school. Now, that law could have been interpreted in theory as also applying to the community schools for adults, but no one has ever interpreted it that way. This Act 163 had absolutely no effect on the community schools for adults. Until you made the argument that those who would have distinguished one program from the other and then seen that there was some reasonable basis for an age 20 cutoff and an age 22 cutoff. Usually when you talk about discrimination, you're saying that a person who was otherwise qualified is precluded from entering. The only thing that precludes your client from entering the 22 cutoff period is the fact that he can't take advantage of it. He is precluded, not by anybody, but by whatever caused him to have whatever problems he's got, from taking advantage of the program. But it's there, and otherwise he could do it, couldn't he? There's no barrier to his entering the second program except his inability to take advantage of it. Your Honor, that's very true. There's no reason in terms of a rule that a special education student couldn't enter the community schools for adults. But to rely on that argument would be completely contrary to the idea of the IDEA, which is that you have to affirmatively provide services in order to ensure meaningful opportunity. It would be contrary to the IDEA if the result of this case is someone who is heavily disabled can go in one of those classrooms with no supportive services and just sit there all day. That kind of conduct is exactly what the IDEA was enacted to prevent. So what this case comes down to is really considering that background of what the IDEA generally requires and what the overall ethic of it is, is this is an outright exclusion and a segregation. Because if you're a 21-year-old student in Hawaii who wishes to continue their public education but requires support services to do so, as a practical matter you can't. If you're the same age and even if you're not necessarily very academically gifted so as to be able to benefit from a rigorous academic program, you can at least attempt to get some form of education through the community schools for adults. And, you know, the DOE is entitled to set up that program however it likes. It has chosen to do so in a way that is not particularly academic and focused on other things. But under state law that still constitutes secondary education. And because it constitutes secondary education under state law, it has to also constitute public education for purposes of the IDEA's age mandate. And I want to leave the next two minutes and 45 seconds for rebuttal. Thank you. All right. Thank you, Counsel. Good morning. Good morning. May it please the Court, Deputy Attorney General Carter Hsu here on behalf of the Department of Education. The only thing in dispute in this case is whether Act 163 violates the IDEA because 20 to 21-year-old non-disabled adults are allowed to enroll in Hawaii's adult secondary education program. If you put it in other terms, it's the DOE's failure to apply Act 163 to prohibit 20 to 21-year-olds from enrolling into adult education, secondary education programs. That's the issue here. And in this case, appellants have not shown either by way of statutory interpretation or by the evidence presented below at the trial court level that there is any IDEA violation that would warrant a reversal of Judge Ezra's decision. Counsel, may I just ask you a question? Sure. What is the statutory basis for the district court's conclusion that the phrase public education refers to the functional equal of a conventional public high school? What is the statutory basis for the district court's conclusion? The district court, I guess you look at it in two ways. The way that public education is used and defined in the IDEA. First of all, in the 20 U.S.C. 1412, in the age limitation, it talks about the provision of public education to children in those age ranges. He used that as a starting point, and he looked at how it's used within the IDEA to say, yes, where public education is used, it's always used in the context of providing, well, excuse me, in the definition of FAPE, it's the provision of an appropriate secondary elementary and a preschool education. And that was our argument. And Judge Ezra didn't trust that interpretation, and he looked at also the practice. So he looked at whether or not the practice of what the adult school was, was whether it was actually a secondary school. And that was his basis. What I don't really understand is that there are many high school students who receive public education that is very different from the conventional high school, math, reading, et cetera, et cetera. Isn't that true? I'm not aware of all types of education. There is available public education, but nowadays there are different forms of education. But when you look at the IDEA, and especially, again, coming back to the age limitation in 20 U.S.C. 1412, the way that public education is used is public education to children. And that, to me, is the difference. We shouldn't be looking at public education in isolation, but in the context of how it's used here, public education to children. Here we're talking about adults. And the IDEA, throughout the IDEA, it's clear that they want to, the focus is to educate children, disabled children, in more traditional public or even private secondary schools. Yeah, but it covers high school students as well. It does cover high school students as well. And high school students have independent plans and not a conventional education. Yes. Is that true? Yes. Well, then, how, I'm trying to understand what the district court meant. Sure. By the conventional math, reading, science, et cetera education, when, in fact, there were many little kids, as well as high school kids, receiving a lot of different kinds of education all the way to the end of high school. Yes. I can't explain everything that Judge Ezra ruled on. I do say that his end result was correct because, at the end, we look at whether or not it, whatever the adult school is, it's not secondary school education as required by the IDEA. And, again, I look back at the IDEA and it looks at, again, all, its focus is children. Well, let me ask you this because this question is related to the questions posed by Judge Nelson because I'm not sure that I understood your answers to her questions. When you say looking back to the IDEA itself, the IDEA does have a definition of secondary education, and it talks about secondary education as determined under state law. And I think that's the reason why Mr. Kim was referencing the Hawaii statute that provides a definition of secondary education. And you're right. It is for adults who, in their youth, for various reasons, didn't get to complete the program, but under the Hawaii statute, it also includes for youths who are in need of courses to complete high school graduation requirements. So I understand that the numbers of youths who didn't complete high school for various reasons and then take advantage of the community schools for adults may be very, very small, but that availability is still there for them. So why doesn't that violate the IDEA in that Hawaii has chosen to make available to non-disabled students this option of pursuing alternative programs through the community schools for adults, but for disabled children, there's no similar provision, no ability to put an IEP in place or extend IEP-type services? I think we go back to the letter to court, which is the OSEP's interpretation. It looks at the GED prep classes, and it says that IEP services are not required by the state to be provided to disabled students in that case. This is the opinion letter that we were talking about earlier? Yes. And Mr. Kim's response to that is that that was in a very different context, where if you are in, for example, conventional high school with an IEP in place and you voluntarily choose to leave that program, then you can't extend or carry your IEP services with you. Are you saying that that doesn't make a difference? I think you don't get the IEP services. I mean, if you look at 302A433, it's secondary education. There's two types of secondary education for adults in Hawaii. The first one is the GED program, and that's what the letter to court focuses on, whether or not disabled students are entitled to IDE services while they take GED prep classes. The letter to court said no, not necessarily, unless the school district considers that to be a part of an appropriate secondary school education. In this case, the evidence presented at trial showed that it's not considered to be an appropriate part of the secondary school education in Hawaii. Rather, it's separate. It's for the adults only. There are some exceptions to the GED program when a student, a non-disabled student, signs what's called a 4140, when they exempt themselves from the compulsory attendance at school. After they have the parents' approval, they can then go into the GED program, take the test if they want to, or enroll in the GED prep class. The second part of this is for those youths who are in need of courses to complete their high school graduation requirements. That, we found out in discovery and through trial, that is simply called credit recovery. Those are students still in high school, still high school students, who are almost at the end of their career in high school but need to catch up on certain credits. They can go to the community school for adults who have computer programs so they can take online programs to earn more credits towards graduation. But the end result is that they graduate from a regular high school. Again, the GED, there's no high school diploma from a regular high school. Well, isn't it true that in 2010 and 2011, four 20-year-old students transitioned straight from high school to the adult education degree programs? Isn't this proof that for at least some, although a few, students, the adult schools are really a form of continuing education? For some, it's an option. All students are advised if they don't graduate from high school in time, if they're too old to continue to attend, that their only option is to, number one, go to a community college where there's no requirement for a high school degree. There's no requirement at all. So someone can get an associate's degree without ever attaining a high school diploma. So they can continue their education in those arenas. Those here, for whatever reason, decided that they want the GED or they want to do something else and get that Department of Education high school diploma from a community school for adults. That's their choice. There's no transition. There's no setup from high school to the community school for adults saying, this is, you've got to go here. You have to go there. There's like, this is your choices. It's up to you to decide what your course in life is. For many in the GED program, they've been out for several years and come back. The numbers you read, it's only like 4% of people who age out, non-disabled adults, 4%. Go and try and get a GED or comp-based diploma. So there's no real, just 4% of those who choose that route. That's what the facts indicate. I think I understand your argument, but I think your opponent is going to beat it up in a minute and he's going to rebut. And I expect he's going to say they're parallel programs, he thinks. Both supported. One has a 20-year cutoff. The other has a 22-year cutoff. And he feels that they both should have the same cutoff. That it's discrimination if they don't. He recognizes, I think, that there are two different programs running parallel, both supported. And he wants his program to be supported as long as the other, at least his argument goes, parallel program is supported. Do you see that as a possibility when he comes back? And I'm asking you now, because you won't get to come back after this. I think what they want is to stay in their public schools, not to actually go to the GED program. That's right. But they just want to stay in the public schools until they're 22, rather than when they're 20. Correct, that's what they want. And tell us why they haven't made a case of discrimination. Well, IDEA isn't a discrimination. We're looking at the ADA 504 area. And in that case, they haven't proven on an individual basis that they are, or that there's a reasonable accommodation for them in the GED, Community School for Adults program. They always argue that as a class, they wanted to continue their FAPES, continue their IEPs in the Community School for Adults. But that's all they said. I'm like, well, the analysis is individuals. Show me, because there are some people who can make it in the Community School for Adults without an IEP, without significant services. And there's others who gain nothing out of the GED prep class, which is basically teaching of a test, like an SAT prep class. Let me ask you in another way. Sure. If we were writing the bottom line and we're deciding for you, what would the bottom line say? That the IDEA applies to school-age children within traditional secondary schools. The adult community schools are funded by a separate act, a separate grant under the Adult Literacy Act. Therefore, adults have totally separate programs funded separately. The congressmen are very clear that people in secondary schools, regardless between the ages of 3 and 21, are considered children. Others in the adult community schools, they're just called adults. And that's the distinguishing factor. IDEA covers children in regular schools. They're not totally parallel. They're totally different. They're called certain things basic elementary education, but their focus is for adults. And that's where their funding comes from. Well, the focus is on adults, and you've mentioned that only about 4% of students, 20-year-olds, take advantage of going to continuing school for adults in order to pursue a GED program. Does the number matter? Is there a point at which your argument would then have to flip? Let's say 30% of high school students choose to pursue that option that's available to non-disabled students that are not available to disabled students. Would your analysis be any different if the percentages were higher? Nor would it. Only because we cannot – it's all a personal choice. Well, isn't that the point, though, that one group of students, non-disabled students, have this choice that's offered? Doesn't the statute, IDE, then mandate that an accommodation or a choice be given to disabled students? I would say no because, again, the IDE only mandates it applies in appropriate secondary school education. And, again, the evidence is that the community school for adults does not provide an appropriate secondary school education. It provides something totally different. Totally different. So that's why it's different. I mean, that's why IDE services aren't necessarily required to be provided in the community school for adults. Again, going back to the letter to court, it says the exception is that if the state of Hawaii would consider the GED prep program to be an appropriate part of the secondary school education, under those circumstances, yes, the IDEA would apply. But in this case, the evidence presented after one day of trial and discovery showed that it isn't. Aren't the IDEA claims separate and distinct from the ADA and Rehabilitation Act claims? I believe that they are. All right. So we could hold that the ADA and Rehabilitation claims that the district court was correct, but the district court was incorrect with respect to the IDEA claims. Isn't that right? They're separate. Well, they are separate, but I think if you find for the IDEA, I think you have to find for the others as well. Because in essence, when you find for IDEA, you provide them with IDEA services. That's the ultimate result. Thank you. All right. Is there any further? No further questions. Thank you. Mr. Ferris, Mr. Nelson? All right. Thank you, counsel. Thank you. I'd like to start out by building off Judge Ferris' observation. The issue is that there are two tracks, one of which has a 20 cutoff, the other of which has no age cutoff whatsoever, and that's the adult education track. And it's very important to understand that that's our theory, that it's the two tracks. Our theory is not that we believe that the state is required to provide IDEA for GED classes or for the competency-based education classes, but the existence of those programs with no age limit entitles our class to continue in the high schools or wherever the state wants to provide them with the individual education plans that they had previously been receiving. I think the key thing here in terms of the difference between the way we look at the case and the way the district court and the Department of Education look at this case is this concept of a conventional, conventional or traditional academic secondary education. You know, if you reflect on this issue for a moment, it should be clear that there's no way that the term public education as used in the IDEA is limited to a conventional high school education because the IDEA wouldn't make any sense. You know, your time is running fast, and I don't want to interrupt you making the points you're about to make, but I think your opponent is going to say, assume that college education was provided, public, no charge, just as high school education is provided, and only those people who can handle college were eligible to go into college. That wouldn't be discrimination, I don't think, would it? Yeah, Your Honor, you're very correct that we would not consider college education to be public education within the meaning of the IDEA, and that's simply because if you look at the definition of secondary school in the IDEA, it expressly excludes post-secondary education. So the college, you know, hypothetical that has been brought up is just not applicable. I mean, in that circumstance, we wouldn't say that we have a problem here. But to return to the point about the structure of the IDEA, public education under the IDEA cannot mean conventional secondary education for the simple reason that a lot of the students who are benefited by the IDEA are so profoundly disabled that they don't receive anything even close to conventional education, but it's still considered a public education under the IDEA. And that gets back to our observation that the Court made in Hendrick's case, is the IDEA really is primarily procedural rather than substantive. And so with that in mind, in looking at how public definition is understood under the IDEA, we have to look at it procedurally and not substantively. And the procedural aspects that are important for this program is that it's free and open enrollment. Thank you. Thank you very much, Counsel. These two matters, RTD et al. versus DOE State of Hawaii and ERK et al. versus State of Hawaii DOE are submitted.
judges: Farris, Nelson, Nguyen